George E. HERRON, Plaintiff,

v.

REGENT DAISY SHIPPING COMPANY, Defendant.

No. 202–73C3.

United States District Court,
W. D. Washington.

Dec. 21, 1976.

Richard W. Pierson, Thom, Navoni, Hoff, Pierson & Ryder, Seattle, Wash., for plaintiff.

Thomas F. Paul, Howard, LeGros, Bucanan & Paul, Seattle, Wash., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEEKS, Senior District Judge.

On the evening of September 10, 1973 plaintiff fell from a ladder while working aboard O/S LAUREL during a log loading operation at the Port of Longview, Washington. This action was filed against defendant, the vessel owner, to recover damages for injuries sustained as a result of the fall. Trial was had on the issue of liability solely.

Plaintiff, a winch driver, boarded LAUREL in daylight at 6:00 p.m. to begin the night shift. This shift performed the first stevedoring on LAUREL at Longview. There were widespread globs of black grease on the LAUREL's main deck which plaintiff observed upon boarding. Plaintiff and his work gang were further alerted to the presence of grease on the main deck by their gangboss at the beginning of the shift. Plaintiff's work area at # 1 and # 2 hatches consisted of separate winch control stations with separate access ladders on the "winch control deck" elevated two decks above the LAUREL's main deck. The intermediate deck, or "winch deck", is the deck on which the winches rest. For convenience, the main deck will hereafter be referred to as deck A, the winch deck as deck B and the winch control deck as deck C.

Plaintiff proceeded to deck C to operate the winches at # 2 hatch as work commenced that evening. Work at # 2 hatch stopped at about 9:15 p.m. due to a malfunction of a boom. Plaintiff then descended to deck A to inspect the boom. When it was determined that boom repairs would take some time, plaintiff's gang was directed to begin work at # 1 hatch. Plaintiff then mounted deck B and passed across it toward the ladder leading to the winch control station for # 1 hatch on deck C. It was from this ladder that he fell. No stevedoring personnel, including plaintiff, had yet viewed or set foot on deck B in the vicinity of said ladder. It was after dark as plaintiff approached the ladder, and the lighting was dim in the area. Lights were purposefully kept low on deck B to better enable winch drivers to see into the brightly illumined hatches where the work was being done. Strewn on deck B adjacent to the ladder and obstructing access to it were loosely coiled lengths of old wire cables or "falls". These falls, which were being retained for use as deck cargo lashings, were liberally greased so that large, sticky globs of dark grease clung to them. Plaintiff had no choice but to step upon the falls to reach the ladder. There were two other ladders which plaintiff could theoretically, but only with difficulty, have used to ascend from deck B to the # 1 hatch winch controls on deck C. I find that the ladder he employed on this occasion was the customary, safest and most reasonable route to his destination.

Plaintiff did observe the falls as he approached the ladder but did not discern

their very greasy condition in the dim light. He then unwittingly tracked grease from the falls up the ladder as he climbed. His fall occurred as he placed his foot upon the top rung and slipped due to grease on his shoe. He fell some 10–12 feet to deck B landing on the falls at the base of the ladder. The top rung of the ladder, unlike lower rungs, was close to a bulkhead thereby restricting foot clearance and increasing the danger posed by plaintiff's greasy shoes.

The foregoing facts sufficiently establish defendant's liability for plaintiff's injuries proximately caused by the fall. Defendant's negligence is manifest whether it be viewed as a breach of its general duty to take reasonable precautions to provide safe working and walking areas for longshore personnel or as a violation of specific Occupational Safety and Health Act regulations requiring the prompt elimination of certain hazardous deck conditions. *See* 29 C.F.R. § 1918.91. The vessel's crew permitted the greasy falls to remain in an area through which stevedore winch drivers were known to pass in order to reach the main ladder leading to the # 1 winch controls on deck C. In fact, it seems altogether likely that the crew itself placed the falls there. This was a poorly lit area where, at night, the falls themselves would be difficult to see and the grease coating on them virtually invisible. The grease on the falls was not an "open and obvious" condition, as defendant contends, but was obscured due to limited available light.

While defendant's liability is plain, plaintiff's own conduct is not free from fault. Plaintiff was an experienced longshoreman with 20 years of longshore work behind him, 10 of those as a winch driver. He certainly knew that winch falls are regularly and heavily greased and that retired falls, such as those he encountered on deck B, might be greasy. It should further have been known to plaintiff, given his long years of experience, that excess grease from the cargo falls in service will frequently drop onto deck B in the vicinity of these old falls.

On the other hand, it was clearly the vessel's responsibility to keep deck B reasonably clean and safe. Plaintiff's duty was only to exercise reasonable prudence to avoid harm as he crossed deck B. I hold that reasonable prudence under the circumstances required that plaintiff do more than blindly tread across the falls unaware of their grease-laden condition. He should have proceeded upon the assumption that they were greasy and therefore exercised extreme caution in climbing the ladder, or alternatively he should have taken steps to ascertain their true condition by use of an auxiliary light or by touch, if necessary. Plaintiff is to be charged with 20% contributory negligence.

Accordingly, plaintiff shall recover from defendant 80% of his provable damages. Costs are awarded to plaintiff. Counsel for plaintiff shall forthwith prepare and submit an Interlocutory Decree in conformance herewith. If the parties are unable to agree upon the quantum of damages within 30 days from the date hereof, the Court will upon motion set a date for a hearing on same. The foregoing shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).